```
_____ FILED        _____ ENTERED
_____ LOGGED       _____ RECEIVED
```

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAN 16 2014

AT GREENBELT
CLERK, U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION | * |
| OF THE UNITED STATES OF AMERICA | * |
| FOR AN ORDER AUTHORIZING THE | * |
| INSTALLATION AND USE OF AN | * |
| ELECTRONIC TRACKING DEVICE ON | * |
| A 2004 FORD TAURUS WITH | * |
| VEHICLE IDENTIFICATION NUMBER | * |
| 1FAFP53U24G119494 | * |

CASE
MISC. NO. 13-3061 WGC

UNDER SEAL

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF AN ELECTRONIC TRACKING DEVICE

Richard J. Fennern, Special Agent (SA) with the Federal Bureau of Investigation (FBI), Washington Field Office (WFO), Washington, D.C., affiant being duly sworn, deposes and states as follows:

### Purpose of the Affidavit

1. This affidavit is submitted in support of an application for the authorization to place and monitor a transponder and/or mobile tracking device on a 2004 Beige Ford Taurus, with Maryland handicap license plate 20881HV, which is registered to Margaret Louise McNeal, 1327 Ray Road, Hyattsville, MD 20782, Vehicle Identification Number (VIN) 1FAFP53U24G119494 (Target Vehicle). Your affiant submits, pursuant to the facts set forth in this affidavit, that there is probable cause to believe that JAMES LARRY MCNEAL is using the target vehicle to engage in crimes including bank robbery and conspiracy to commit bank robbery in violation of 18 U.S.C. §§ 2113 and 371, and that prolonged surveillance of this vehicle will lead to additional evidence that MCNEAL and others are engaged in such crimes. The use of an electronic tracking device will be important in developing further evidence of the conspirators' actions of planning and conducting bank robberies, including the act of casing a bank before a robbery, placing MCNEAL

at the scene of the bank robbery, and locating where evidence of the crime is hidden.

### Your Affiant

2. I am a duly sworn Special Agent of the Federal Bureau of Investigation and have been so employed since June 2009. I am currently assigned to the FBI's Baltimore Field Office in Baltimore, Maryland serving on the FBI's Cross-Border Task Force, which investigates armed robberies, bank robberies and other violent crimes in Prince George's County, Maryland.

3. I successfully completed New Agent training at the FBI Academy in Quantico, Virginia, which included extensive coursework in conducting criminal investigations. Also, as a member of the Cross Border Task Force, I have actively participated in investigations of armored car and bank robberies, using, among other methods, interviews, physical surveillance, cellular phone analysis, and the execution of search and arrest warrants. Based on my training and experience as a Special Agent of the FBI, I am familiar with the means and methods that bank robbers use to carry out bank robberies.

4. Your affiant is aware persons who rob banks often travel to the bank before the robbery in order to gather information about the bank and plan the robbery.

### The Investigation

5. At approximately 10:58 a.m. on October 29, 2013, two unknown subjects (UNSUB1 and UNSUB2) entered the Wells Fargo Bank located at 110 Congressional Lane, Rockville, Maryland 20850. UNSUB1 entered the front door of the bank and dropped a sock filled with sand at the front door in an attempt to prop the door open. UNSUB 1 then entered the lobby area of the bank and shouted, "Everyone get down and don't push the button". UNSUB2 followed UNSUB1 into the bank. UNSUB2 displayed a silver hand gun and carried a brown paper bag in his

2



hand. UNSUB1 jumped over the teller counter and unsuccessfully tried to take United States currency from the teller drawers. UNSUB2 shouted to UNSUB1 "They pushed the button, we gotta go". UNSUB1 then jumped back over the counter to leave. UNSUB2 then fired one round from the handgun into the ceiling. Both subjects fled out the front door. UNSUB1 was described as a black male, 5'8", 170 lbs, black hair, dark colored skin, wearing a black ski mask, black gloves, black pants, and a grey zipped up hooded sweatshirt. UNSUB2 was described as a black male, 5'8", 170 lbs, grey colored hair, dark colored skin, and wearing black sunglasses, black pants, and dark blue or black colored hooded sweatshirt.

6. At approximately 3:12 p.m. on October 30, 2013, two unknown male subjects (UNSUB1 and UNSUB2) entered the Bank of Georgetown, 1850 Towers Crescent Plaza, Suite100, Vienna, Virginia 22182. UNSUB1 vaulted over the counter towards the victim teller, stating "Give me the money." UNSUB2 displayed a silver revolver, pointing the weapon at the floor in view of the victim teller while telling UNSUB1 "Get the money" and "Let's go, come on let's go." UNSUB1 grabbed money from the victim teller's drawers and placed it in a small black plastic shopping bag. Both subjects then fled the bank on foot. The loss to the bank was $3,449.00. UNSUB1 was described as a black male, approximately 25 to 35 years old, approximately 5' 10", wearing a dark colored jumpsuit and a black cloth mask with eye holes cut out. UNSUB2 was described as a black male, bulky build, approximately 5'7"-5'8" in height, mustache with grey hair, wearing a dark blue jacket, had a deep voice, and was carrying a silver colored revolver.

7. At 11:19 a.m. on November 25, 2013, two unknown subjects (UNSUB1 andUNSUB2) entered the Wells Fargo Bank located at 2213 North Glebe Road, Arlington, Virginia 22207. UNSUB1 entered the lobby and ordered the customers and bank employees to the



ground while brandishing a firearm. UNSUB2 jumped the teller counter, ordered the employees to the ground at gunpoint, and put bank money into a bag. UNSUB1 threw an 82-year-old woman to the ground as the subjects were exiting the bank. The loss to the bank was $19,001.00. UNSUB1 was described as a black male, approximately 45 to 50 years old, approximately 5'7"-5'9" in height, medium build, dark skinned, and wearing dark clothing and a grey or dark colored jacket. UNSUB1's weapon was described as a medium sized dark grey colored pistol that had a squared barrel. UNSUB2 was described as a black male, 30 to 40 years of age, 5'10"-5'H" in height, 160-170 lbs, skinny build, and wearing an off-white colored wool or knit hat and an off-white colored sweater. UNSUB2's weapon was described as a short, small black pistol that resembled a Glock.

8.    At 10:42 a.m. on December 10, 2013, two unknown subjects (UNSUB1 and UNSUB2) entered the TD Bank located at 905 Rhode Island Ave, NE, Washington, D.C. As they entered the bank, UNSUB1 placed a stick in the door frame, preventing the door from fully closing. UNSUB1 approached the only teller who was counting a customer's deposit money. UNSUB1 demanded money and displayed a handgun. UNSUB2 grabbed the only two bank employees in the lobby and demanded they open the door to the rear of the teller counter. UNSUB1 gave the teller a black duffel bag to put money in. The teller put the customer's deposit money in the duffel bag. UNSUB2 took the two bank employees to the rear of the bank near the drive through window, where the employees stated there was no money in that area. UNSUB1 continued to demand money and when the customer started to leave the bank, UNSUB1 told UNSUB2 the customer was going to move the stick. Both subjects fled the bank towards Rhode Island Ave NE, Washington, D.C. The loss to the bank was $3,760. UNSUB1 was described as a black male,

4



medium to dark complexion, 5'9"-5'10" in height, 40 to 45 years of age, wearing a black skull cap, black knit scarf, black fluffy vest, grey sweatshirt, white latex gloves, and white shoes. UNSUB1's weapon was described as a silver handgun. UNSUB2 was described as a black male, medium to bulky build, 5'7"-5'8" in height, 35 to 45 years of age, wearing a black skull cap, black knit scarf, black fluffy jacket, grey hooded sweatshirt, white latex gloves, blue jeans, and dark shoes.

9. On December 12, 2013 a confidential human source (CHS) called to report information regarding the identity of the bank robbers of the Rhode Island bank robbery, which had occurred on December 10, 2013. At this time, the CHS identified one of the surveillance photos from this robbery as looking like MCNEAL. During meetings with agents, the CHS provided information that had not been released to the media about the robberies described above. For example, the CHS stated the three suspects split $27,000 among them. The total amount of money taken from the robberies at the time was approximately $27,000. This information had not been released to the media. Further, the CHS identified three suspects, including MCNEAL, and stated that he and the suspects have used controlled substances together. The CHS said that the three suspects, including MCNEAL, have discussed in code committing bank robberies and have asked the CHS to participate. The CHS stated that the suspects have discussed how they "case" the banks before robbing them and the vehicle used by them to commit the robberies. The CHS was shown pictures of MCNEAL and the other two suspects and confirmed their identities as the persons he identified as being involved in the bank robberies described herein. The persons the CHS has identified, including MCNEAL, have all been convicted of committing bank robberies in the past in a similar method to the ones under investigation.

10. On December 14, 2013, the CHS provided the information of the vehicle driven by



MCNEAL during the bank robberies committed as of that date as a 2004 Beige Ford Taurus, with Maryland handicap license plate 20881HV.

11. On December 13, 2013, law enforcement conducted database checks to identify the registered owner of the Ford Taurus with license plate 20881HV, as MCNEAL's mother, Margaret Louise McNeal with an address of 1327 Ray Road, Hyattsville, MD.

12. On December 27, 2013 surveillance was conducted on the Ford Taurus. MCNEAL was witnessed driving the vehicle from 1327 Ray Road and picking up the two other suspects identified by CHS before heading to Arlington, VA. MCNEAL parked the vehicle within view of a Bank of America at Columbia Pike and Glebe Road. After a short time they drove within view of a Wells Fargo located at 951 S George Mason Dr, Arlington, VA, where they parked for approximately ten minutes before leaving the area.

13. This affidavit is being submitted in support of an application which seeks an order authorizing the covert installation and use of an electronic tracking device on the exterior of a tan 2004 Ford Taurus, with Maryland handicap license plate 20881HV and VIN 1FAFP53U24G119494, and authorization to remove and re-install the electronic tracking device on the exterior of the target vehicle at any time should the device be rendered inoperable.

14. This affidavit is based, in part, upon information provided to me by other agents of the FBI and other law enforcement officers, information provided by cooperating individuals, physical surveillance, and other information gathered during the course of this investigation. Because this affidavit is being submitted for the limited purpose of securing an order for the covert installation and monitoring of a tracking device on the exterior of a vehicle, your affiant has not included each and every fact known to him concerning this investigation. Your affiant has set



forth only the facts which he believes are necessary to establish probable cause for the issuance of this order.

15. As a result of your affiant's personal participation in this investigation, I am familiar with all aspects of this investigation. On the basis of this familiarity, and on the basis of other information which your affiant reviewed and determined to be reliable, your affiant alleges the facts to show there is probable cause to believe that MCNEAL and others have committed, are committing, and will continue to commit the following offenses: bank robbery in violation of Title 21 United States Code Section 2113. Further, there is probable cause to believe MCNEAL utilizes the target vehicle to facilitate and commit these crimes.

### MCNEAL'S Continued Use of the Target Vehicle

16. It is believed that MCNEAL uses the target vehicle to travel to banks in order to plan and conduct bank robberies. Through use and monitoring of an electronic tracking device on the target vehicle, your affiant believes he may obtain information about MCNEAL's patterns of travel and interactions with others that may be evidence of bank robberies and aid in identifying the location of further evidence.

### Requested Access to the Vehicle

17. Your affiant is aware that vehicles are mobile and thus travel to and from private properties frequently, and thus once tracking devices have been installed on the target vehicle, it may be necessary to re-enter the target vehicle to repair, maintain, adjust, replace, monitor, and/or remove the tracking device. Additionally, upon installing the electronic tracking device on the target vehicle, it may be necessary to enter the vehicle at night, for safety reasons, and move it to a safe location for a short period of time in order to enter the vehicle to most effectively adjust,



repair, and/or remove the tracking device.

18. The attachment of the electronic tracking device, and any necessary repairs, adjustments, or replacements of such device, as well as the removal of such device at the conclusion of the monitoring authorized by the Court, will be accomplished in such a way as to minimize the amount of intrusion or trespass of any premises where the vehicle is located.

19. Accordingly, your affiant respectfully requests that the Court's order authorize members of the FBI or other assisting law enforcement officers to enter into the target vehicle for the purpose of installing, adjusting, repairing, and/or removing the tracking device. Additionally, because it may be necessary to temporarily remove the target vehicle from a parked location in order to accomplish installation, adjustment, repair, and/or removal of the device, it is respectfully requested that the Court's order also permit members of the FBI or other assisting law enforcement officers to temporarily move the vehicle for these purposes.

## Conclusion

20. Based upon the information set forth above, your Affiant maintains there is probable cause to believe that MCNEAL is conducting and/or assisting with bank robberies in violation of 18 U.S.C. §§ 2113 and 371, that he is using the target vehicle in furtherance of such activity, and that the installation and use of an electronic tracking device on the target vehicle described herein will lead to additional evidence. Accordingly, your affiant respectfully requests that the Court issue an order (1) authorizing the installation, use, and monitoring of an electronic tracking device for a period of 45 days on the target vehicle; (2) authorizing members of the FBI or other assisting law enforcement officers to temporarily move the aforementioned vehicle for the purposes of installation, adjustment, repair, and/or removal of the tracking device; and (3)



directing that the application, this affidavit, any other documents submitted in reference to the application, and any resulting order, be sealed.

_____
Richard J. Fennern, Special Agent
Federal Bureau of Investigation

Sworn and subscribed to before me this 30th day of December 2013.

_____
WILLIAM CONNELLY
CHIEF UNITED STATES MAGISTRATE JUDGE
DISTRICT OF MARYLAND